957 So.2d 104 (2007)
Hagen DIAZ, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2742.
District Court of Appeal of Florida, Fourth District.
May 16, 2007.
Roy Black and Christine M. Ng of Black, Srebnick & Kornspan, P.A., Miami, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Thomas A. Palmer, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Hagen Diaz appeals his criminal convictions and sentences rendered after a jury found him guilty of aggravated battery with a deadly weapon (automobile), reckless driving, and leaving the scene of a crash with injuries. His sole issue on appeal concerns whether the trial court committed *105 fundamental error in responding to jury questions during deliberations. We conclude that the court did not commit fundamental error and affirm.
The incident that led to the criminal charges against the defendant occurred at the Moroso Motor Sports Park in Palm Beach County. The defendant was there as a spectator at the go-kart races and the victim, Palm Beach County Sheriff's Deputy Dale Fox, was working an off-duty detail directing traffic. According to the testimony at trial, Fox told the defendant to move his car, which was parked in a restricted area. As the defendant was making a three-point turn to leave, Fox walked towards the car and loudly yelled for defendant to stop because the area he was headed towards was congested with people. He put his hands on the hood, saying "stop, don't you see these people." Another off-duty deputy, Lawrence Colagiovanni, reached over and opened defendant's driver's door. There was conflicting evidence about whether Colagiovanni reached inside the car and grabbed the defendant or just opened the door and yelled at him to stop.
According to Colagiovanni and Fox, the defendant's car crept forward and the defendant started pushing Fox with the front of his car. They claim that the defendant reached out, grabbed the door, and slammed it shut. He then accelerated and struck Fox on the left knee, knocking him over onto the ground. Fox testified that the defendant was looking straight at him as he pulled forward and that he and the defendant had continuous eye contact until Fox was knocked to the ground. Defendant then sped up, made a left turn into a restricted area, went onto the access road, and took off towards the Beeline Highway without stopping.
After checking on Fox, Colagiovanni noticed a crowd inside the gate area and saw Donna Krammer lying on the ground with blood flowing from the top of her head. Krammer had been struck by the driver's side of the defendant's car. Another person, Christian Heart, said that the car almost hit him.
The defendant testified at trial. He said that Colagiovanni opened his door, reached inside, grabbed his arm, and tried to pull him out. As a result, defendant may have released the brake, causing his car to move forward and strike Fox. He said he did not know that Colagiovanni was an officer or an employee at Moroso and believed that he was being attacked by him. He also felt threatened by a mob of people who had surrounded his car and began kicking the side of it. His mother, who was in the car with him, got out to try and calm the situation. Because he feared for his safety, appellant fled the area, leaving his mother behind. He testified that not only did he not intend to strike anybody, he was not aware that he had done so when he drove away.
The defendant was charged by information with four counts: Count I-aggravated battery with a deadly weapon or knowingly causing great bodily harm to Donna Krammer; Count II  aggravated battery with a deadly weapon against Dale Fox; Count III  aggravated assault against Christian Heart; Count IV  reckless driving causing great bodily injury, and Count V  leaving the scene of a crash involving injury.
The trial judge read the jury the standard jury instructions on the charges. During their deliberations, the jury sent a written question to the court, asking, "Does the driver have the intent to strike Dale Fox if we feel intent is to leave the scene knowing he might hit Dale Fox ? (without necessity)." Conferring with counsel, the trial judge stated:

*106 Well, I don't know that I can answer that. I think that's ultimately what they have to decide. So I mean I think I would have to tell them that that question would call for me to comment on the evidence, which I can't do, and you have to rely on your own. Something like that. Does that sound good?
Neither the prosecutor nor defense counsel objected. The trial court brought the jury back into the courtroom and answered their question:
THE COURT: . . . And I've discussed this with the lawyers and what I can tell you is we can't really give you much of an answer because  and the reason is to give you an answer would be us basically tell you from my mouth what the evidence is and only you can decide that. If you have a question of law, you know, then that's something the Court can handle.
A juror spokesman responded:
JUROR KENNEDY: We did have a follow-up 
THE COURT: Sure.
JUROR KENNEDY:  assuming we couldn't get an answer.
THE COURT: Okay.
JUROR KENNEDY: Is there a definition to intent that we could rely on.
The court called another sidebar conference with counsel and decided, without objection, to give the following instruction on intent, which was taken from the burglary instruction:
THE COURT: The intent with which an act is done is an operation of the mind, and therefore, is not always capable of direct and positive proof. It may be established by circumstantial evidence like any other fact in a case.
After this instruction was given, the following colloquy occurred:
JUROR KENNEDY: In some of the definitions or descriptions of the charges it refers to intentionally or knowingly. Can those be used interchangeably or are they meant to be?
THE COURT: Do you guys want to come up. So your question is where it talks about intentionally and knowingly, does it mean the same thing? Can they be used  is that your question?
JUROR KENNEDY: It's referred in some definitions and not in others. And I'm wondering 
THE COURT: Give me a specific. Which charge are you talking about?
JUROR KENNEDY: Battery with a weapon, 2-A.
After a very brief sidebar, at which defense counsel made no comment, the court instructed the jury:
THE COURT: I can tell you that you would have to rely on your own understanding of those instructions. I certainly can re-read the instructions to you. You have them in front of you. I don't know if you want me to do that.
Again, defense counsel lodged no objection.
The jury acquitted the defendant on Counts I and III but found him guilty as charged of Count II (aggravated battery with a deadly weapon against Dale Fox) and Count V (leaving the scene of a crash). The jury found the defendant guilty of the lesser included offense of Count IV, reckless driving.
The record reflects that the defendant's trial counsel did not object to any of the trial court's responses to the jury's questions. The defendant argues, however, that the court committed fundamental error by giving the jury misleading, inaccurate, and incomplete supplemental instructions on the criminal intent element of the charged crimes. According to the defendant, the *107 jury's first question indicated that the jurors did not understand the concept of criminal intent necessary to return a guilty verdict on his charges. The jury asked: "Does the driver have the intent to strike Dale Fox if we feel his intent is to leave the scene knowing he might hit Dale Fox? (without necessity)" (emphasis supplied). The defendant argues that the trial court was obligated to correct the jury's apparent confusion about the intent necessary for an aggravated battery conviction and that its failure to respond to the jury's question left the jury with an erroneous understanding of the criminal intent element. He contends that he was entitled to have the jury instructed consistent with case law holding that "[t]he battery statute's prohibition of an `intentional' touch or strike covers situations where a defendant knows that a touch or strike is substantially certain to result from his acts." C.B. v. State, 810 So.2d 1072, 1073 (Fla. 4th DCA 2002) (emphasis supplied); see also S.D. v. State, 882 So.2d 447 (Fla. 4th DCA 2004).
In C.B., a juvenile was found guilty of battery on a school employee based on his act of angrily throwing a lighter on the floor, which bounced off the floor and struck his teacher's ankle. The juvenile moved for a judgment of acquittal, contending that battery is a specific intent crime and that there was no evidence that he intended to strike his teacher. We reversed his conviction, stating: "In this case, it is not enough to sustain a conviction that the defendant intentionally threw the lighter at the floor; the state was also required to prove that the defendant threw the lighter in such a way that it was substantially certain that it would hit the teacher's ankle." Id. at 1073. Defendant argues that the trial court fundamentally erred in this case by leaving the jury with "the erroneous impression that it could convict Mr. Diaz of aggravated battery based on a finding that he `might' have hit Dale Fox."
In Perriman v. State, 731 So.2d 1243 (Fla.1999), the Florida Supreme Court addressed the trial court's discretion in responding to a jury's request for additional instructions. There, the jury sent a note to the trial court inquiring about the knowledge element of the charge of possession of a firearm by a convicted felon. The jury essentially asked the trial court whether it was against the law for a convicted felon to be in a car with a gun present if the convicted felon had no knowledge of the gun's presence. The trial court declined defense counsel's request to answer the question with a simple "No," and over defense counsel's objection, directed the jury to refer to the standard jury instructions. The supreme court held that the trial court did not abuse its discretion in declining to give an additional instruction in that case, where the meaning of the jury's note was not clear and an additional extemporaneous instruction might have further confused the jury. The court further noted that the standard instructions, to which the trial court referred the jury, provided adequate guidance.
Discussing the trial court's options in responding to a jury query, the court explained:
Where a jury is confused concerning a point of law, the court must exercise sound discretion. In some cases, the court may properly refer the jury to the standard instructions in toto given in that particular case, but in many cases the preferred practice will be to direct the jury to specific instructions. Where appropriate, the court may also clarify a point of law with a brief, clear response.
Id. at 1246-47.
In holding that the decision whether to give additional instructions is within the *108 trial court's discretion, the court cited the controlling rule of procedure, Florida Rule of Criminal Procedure 3.410. Id. at 1246. Rule 3.410 provides:
After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read to them. The instructions shall be given and the testimony read only after notice to the prosecuting attorney and to counsel for the defendant.
(emphasis supplied). The court observed that this rule of procedure was amended in 1972 to make it discretionary, rather than mandatory, for the trial judge to give additional instructions upon request.
In our view, the questions presented by the jury in this case were purely legal ones that did not call for a comment on the evidence. Thus, under the particular facts and circumstances of this case, it would have been helpful and appropriate for the trial court to give the jury a brief and concise response clarifying that intentional conduct in a battery case required substantial certainty that a touching or striking would occur. However, we cannot say that the trial court abused its discretion, much less committed fundamental error, in not giving this additional instruction. The standard instruction originally given to the jury adequately informed the jury that to find the defendant guilty of aggravated battery with a deadly weapon, it had to find that he "intentionally touched or struck Dale D. Fox against his will, and in committing the battery, used a deadly weapon." See Fla. Std. Jury Inst. (Crim.) 8.4. The term "intentionally," as used in the standard aggravated battery instruction, does not suggest that negligent or even reckless conduct would suffice.
The state cites Castor v. State, 365 So.2d 701, 703 (Fla.1978), in arguing that there can never be fundamental error in reinstructing a jury. Although we disagree that Castor stands for this broad proposition, we do believe that the policy underlying the contemporaneous rule generally requires a timely and specific objection to preserve an issue of alleged error in giving additional or supplemental instructions, when the original instructions on the applicable law in the case were accurate and adequate. See id. (stating that "[t]he requirement of a contemporaneous objection is based on practical necessity and basic fairness in the operation of a judicial system. It places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings.").
For the reasons discussed above, we affirm the defendant's convictions and sentences.
Affirmed.
STEVENSON, C.J. and POLEN, J., concur.